314-0863 United Central Bank, Appellee by Stephanie Stitten v. Monee Hospitality, Inc. Mahadi Patel, et al. Appellant by J.L. Amin. Mr. Amin. Good afternoon. Good afternoon, Your Honors. May it please the Court. I only mention this because my predecessor did, but I also have a law student in court with me today. Maytree Patel is visiting us. Welcome. My name is J.L. Amin, and I represent the appellants in this matter, Bharti Patel, Vijay Patel, Jagdish Patel, and Daksha Patel, who I will collectively refer to as guarantors. And to briefly recite some of the facts that underscores the issues that I feel are pertinent for this appeal, this case started as a mortgage foreclosure against Monee Hospitality, Inc., who I'll refer to as Monee, and who is the owner of a hotel property in Monee, Illinois. Now, the complaint included several counts. Count one of the complaint was a mortgage foreclosure count against Monee, but it also included the guarantors as defendants in count ones, and the appellees sought against the guarantors relative to count one a deficiency judgment for any deficiency that remained that wasn't sufficient to satisfy, or from the proceeds of the sale that wasn't sufficient to satisfy Monee's lien. Now, simultaneously with count one, the appellee filed counts two through five, which were personal guarantee counts against the guarantors individually based on their personal guarantees, and those personal guarantee counts sought a judgment in the full amount of the indebtedness, irrespective of any deficiency, and without any intervening condition of a judicial sale taking place. So there were two counts, count one with all of the counts named the guarantors within it, but count one was specific to a deficiency judgment against the guarantors, whereas the other counts were absolute judgments that the appellee was seeking. Now, a summary judgment was obtained against Monee and the guarantors in January of 2013, and one of the big issues that underlie the legal arguments of this appeal is what the nature of that judgment was. From my perspective, the summary judgment entered in January of 2013 did not seek judgment on the separate guarantee counts. The summary judgment motion doesn't mention counts two through five. It only sought summary judgments on count one, and included the defendants only insofar as they were seeking a deficiency judgment against those defendants, and that is entirely consistent with count one and completely inconsistent with counts two through five. Thus, the judgment order entered in January of 2013 enters a judgment against the guarantors only for a deficiency that results from a judicial sale yielding insufficient funds to satisfy the appellee's lien. Subsequently, this case was stayed because of a Chapter 11 bankruptcy filing by Monee. The property that's the subject of the foreclosure was ultimately sold by Monee as a debtor in a Chapter 11 Section 363 sale, and another important fact from my perspective is that the sale in the bankruptcy court was not a sale by the trustee appointed by the bankruptcy court where the court or vis-a-vis the trustee is the vendor. This was a sale by Monee as a debtor in which Monee itself was the vendor. So it's a clear distinction between, you know, a 363 sale versus a trustee sale in a bankruptcy where the court is the vendor. And it's with this backdrop that I turn to some of the legal arguments in my brief. Let me ask, let me clarify one fact. The agreed order through which the sale was accomplished in the bankruptcy court also required a deficiency payment by the guarantors? It didn't require a deficiency payment. It just didn't waive a deficiency. And it did make clear the agreed order in the bankruptcy proceeding that the guarantors were not releasing, were not releasing, or rather the bank was not releasing any deficiency claim against the guarantors. The deficiency claim, but not the full amount? It's my understanding that in the agreed order in the bankruptcy, it was strictly mentioned only the deficiency claim, not necessarily the full amount. But, you know, it's on the record. I just can't recall that at the moment. Thank you. So to turn to, there's two or three critical arguments in this appeal. And the first is that the appellee is essentially seeking to ratify and confirm a sale in a foreclosure court in the exact same way that you would normally confirm a sale under Section 1508 of the Illinois Mortgage Foreclosure Law. But what they're doing is they're using a bankruptcy sale in a different court as a substitute for a traditional foreclosure sale in a foreclosure court. And in my view, there's simply no precedent for this under any statute, and there's no instance in common law that I could find that provides for this. And the appellee cites numerous cases in their response brief, all of which stand for the simple proposition that judicial sales do occur in different forms and in other contexts. We don't maintain that a foreclosure court has its own purview and jurisdiction for conducting a judicial sale. Indeed, they occur in many other contexts, including probate, including bankruptcy, and in shareholder disputes. But what we do maintain is that in the context of a mortgage foreclosure, what is a judicial sale is something that's defined by statute. And in this case, it's literally the heading. Section 1507, which deals with judicial sales. And in this mortgage foreclosure case, what is a judicial sale is further delineated in the foreclosure order that was entered in January of 2013. Both the IMFL under Section 1507 and the foreclosure order set forth the kind of sale that is to take place, the form where the sale should occur, and the procedure and the manner in which that sale is to be conducted, none of which took place in the sale of this property. And the circuit court, in its decision, argues that the bankruptcy sale was acceptable for a number of reasons. One is they say the circuit court found that the bankruptcy sale was reasonable in its terms. But I would point out that this isn't the standard for conducting a foreclosure sale. It's not that one can conduct a sale in any manner that's reasonable, especially in light of the IMFL and a foreclosure order that says you have to conduct it in a certain way, in a certain manner. And the circuit court additionally sought to find parallels between the bankruptcy court sale and how a judicial sale in a foreclosure court would normally be conducted. But even using this standard, again, which is not a standard that's recognized by any legal authority, if you consider that in the bankruptcy court sale, in this case, it was a sale by Momee as the vendor versus a foreclosure sale in a traditional court where the court is the vendor, I think they're markedly different. And you can distinguish it on that basis. I have to ask you another question. I've been confused about this. Why didn't the sale in the bankruptcy court under the auspices of the bankruptcy court moot the action that was going on in Wilco? I think in many instances that's what would have happened. And I think that that's partially the – well, it's not really the basis for our appeal. But it's not very common – foreclosure case in which the debtor goes and files Chapter 11 bankruptcy. That may happen. But I agree with you. This is something that's very novel where you have the lender coming back into foreclosure court because they hadn't perfected their prior judgment on their guarantees to come back into foreclosure court and use essentially a 1508 motion to confirm as a predicate to try and perfect their judgment, which was previously conditioned on judicial sale and subject to the money satisfying its lien. I think in this case they found that they couldn't act on that prior judgment because it had these conditions and it had these conditioned precedents before they could execute on it. And this was the manner in which they chose to try and perfect their judgment so they could execute on it. Okay. It's – the thing that I can't get past is that by the time the bankruptcy was finished, there was nothing to sell. That's true. So when you go back to Will County, what's going on? What is there to sell? What is all this judicial foreclosure and sale stuff that's going on? There's no property. There is no property, and there is nothing to sell. And I guess the point that I would state is that because there is no property, there is no lien, there is no possibility for a deficiency, and there can be no judgment. Okay, except that the deficiency is sort of incorporated into the agreed order in the bankruptcy court. So I don't think you're getting away from the deficiency judgment. Nor am I arguing any waiver of that deficiency. But the bankruptcy court did expressly provide the deficiencies would remain. I just object to the manner in which the appellee is trying to take this prior judgment with conditions of a judicial sale and substitute a bankruptcy sale in lieu of a foreclosure sale and attempt to try and get a full judgment for, you know, $1.6 million and also seek on top of that prejudgment interest, which, you know, when there wasn't even a final judgment, clearly there wasn't a final judgment, and in addition to that, you know, additional attorney's fees, all of which I've raised in my brief. One very important point that I'd like to touch upon is Rule 11.0 of the local rules of the Twelfth Judicial Circuit. The record reflects that the circuit court in confirming the sale justified its decision in part by sua sponte bringing in the application of Rule 11.01 and specifically 11.01B. And I'd like to take this opportunity to clarify what I believe is the application of Rule 11 generally versus Rule 11.01B specifically. Now, Rule 11 as a whole comprehensively deals with mortgage foreclosures in the context of, you know, the local rules in the local court. So it deals with all foreclosures, but specifically Rule 11.01B provides that a court has the discretion at the direction of the court and as assigned to an officer of the court in the judgment order to order that a sale be taken outside of a mortgage foreclosure and be sold separately. But it provides that it has to be at the order of the court and at the discretion of the court. I believe it was error to apply Rule 11.01 as it was applied by the circuit court, because extrajudicial sales where the court is the one that prospectively has to direct the sale and gives the authority to direct the sale and take it outside of the court, I don't think the intention and the plain meaning of Rule 11 is to bypass all of that and have a party go out of their own accord, sell the property in any manner they wish, and then come back and use Rule 11 as a basis to bless the sale after the fact and say, well, I would have approved of this sale had it been before me, and I would have directed, I would have approved the sale, but, you know, but we didn't. It resulted in a substantial compliance with the protections and processes of the bankruptcy sale were substantially, at least, similar to the foreclosure sale, so that it was not, those protections were still in place. That is true, and I don't argue with that. In this case, the sale that was done, it was not egregious by any means, but I think the point is that it's something that derogates from the normal foreclosure process, which, again, by statute and by court order provides that the property has to be sold in a certain manner. Instead, you know, it was completely bypassed and sold in a different manner, and the fact that it may have been a reasonable sale in hindsight doesn't eliminate the fact that it's still in derogation of both the IMFL and the foreclosure order in this case. And, again, the point I was trying to make about Rule 11 is, you know, maybe I didn't make this as clear as I wanted to in my brief. Rule 11, as a whole, even provides for, you know, in the case of mortgage foreclosures, retrospective confirmation of a foreclosure sale after the fact. But the point I want to hone in on is 11.01B, which takes the foreclosure, or excuse me, which takes a property outside of the foreclosure process. That itself does not permit any kind of retrospective confirmation of the sale after the fact, and I think that's inherent by the plain wording of Rule 11.01B. Again, it says that you can direct a sale outside of the foreclosure process, quote, as assigned to an officer of the court in the judgment order, and, quote, only to the extent and in such a manner that a court may in each case direct. So to find that just because this sale in the bankruptcy court was not egregious and seemed to be fair and because it ended up not being so bad, we're going to use Rule 11 as a way to bless the sale after the fact. I just think it violates the wording of Rule 11, and it violates the IMFL, as well as it's in violation of the court order. Two minutes, please. So in addition to Rule 11, I wanted to briefly discuss, you know, the arguments of waiver and admission raised in the response brief by the appellee. The argument has been made that this concept of the judgments, or excuse me, the counts 2 through 5 did not result in or there was no judgments on counts 2 through 5 of the complaint against the guarantors. This is an argument that I raised originally in the response to the motion to confirm. So it was something that was raised in the circuit court, and it's not something that would be waived, and it would be something that would be available to us on appeal. And very briefly, you know, one of the arguments is they granted post-judgment interest, seeking nearly $300,000 beginning all the way back in 2013. We objected that on the basis that there was no judgment entered. Whatever judgment that was entered was not a final judgment, and therefore it would not be in accordance with Section 1303. And we also object to the attorney's fees of an additional $100,000 in this case, and the reason is that there was no disposition on counts 2 through 5 of the complaint, because, again, the point that I'd like to drive home, the judgment entered in January of 2013 was a deficiency judgment that's consistent only with count 1. Counts 2 through 5 sought an absolute judgment without regard to a deficiency. If they intended counts 2 through 5 to be, if they're saying that counts 2 through 5 resulted in a judgment against the guarantors in their summary judgment, then why did the appellee only seek a deficiency? That's entirely inconsistent with 2 through 5, in which the complaint provides that they can get a judgment in the full amount of the indebtedness, but instead they chose only to get a judgment for a deficiency, which is consistent with count 1. And for those reasons, you know, and for the other issues, I stand on my brief, and we ask this Court to reverse the circuit court's judgment. Are there any other questions? Thank you, Mr. Amin. Ms. Stinton? Good afternoon. Good afternoon, Your Honors. My name is Stephanie Stinton, here on behalf of the Appellee United Central Bank, which I will refer to as UCB to shorten things. I'll also use all of the same guarantors and monies that were used by the appellant to keep things simple. Contrary to how the case has been presented to you by the appellants, this is actually a very simple matter. UCB filed a six-count complaint. Counts 2 through 5 included breach of guarantee counts against all the guarantors, who are the appellants here today. On January 10, 2013, after we filed a motion for summary judgment on the entire complaint, our motion for summary judgment was granted. Now, that motion for summary judgment was entered onto a briefing schedule that also applied to a motion to appoint a receiver. No response was ever filed to our motion for summary judgment. Now, they filed a response to the motion to appoint a receiver, but they chose not to defend against this motion for summary judgment. And it ultimately was entered. It was entered on the entire complaint and pursuant to the prayer for relief, which stated that they were seeking entry of summary judgment on the complaint and based on the proof submitted in support of the motion for summary judgment, which included the affidavit of Michael Evans, which stated the breaches of guarantee, the existences of the guarantee, the breaches that UCB had fully performed under the guarantees and proved up the amount that was due under the guarantees that the entire affidavit was in compliance with Rule 191. No defense has ever been submitted to the actual entry of the motion for summary judgment and that being granted. Now, the order specifically states that UCB is entitled to summary judgment on its complaint, that the summary judgment is being entered with respect to the complaint and the amount of that judgment was adjudicated on that date. The amount that was supported by the affidavit was approximately $2.7 million and after the petition for attorney's fees and per diem interest, it was roughly $3 million. Now, also at the time of that, we filed a separate motion for judgment foreclosure and sale and entered a separate judgment of foreclosure and sale. That judgment also states that summary judgment is entered on the complaint, does not limit it to any particular count, does not limit it to count one, it does not exclude any other counts. Shortly after we enter those two orders, Mone files for bankruptcy and we filed a motion for relief from stay so that we could go back to the state court and proceed with the judicial sale as was originally contemplated when we entered the orders in January of 2013. Ultimately, the debtor, Mone, UCB, and the guarantors entered into an agreed order in the bankruptcy court that specifically acknowledged the existence of the $3 million judgment, acknowledged that the guarantors were guarantors and obligated under that judgment amount, specifically stated that UCB was not waiving any of its rights to proceed against those guarantors, and also conditioned the enforceability of the order against UCB on the guarantors' consent to the jurisdiction of the bankruptcy court pursuant to that order and them submitting some other things with respect to their financials. So at the time that order was entered, that agreed judgment order, which was I think March 2013, all of the parties that were part of that negotiation and part of that agreement contemplated that UCB would be exercising its rights to proceed with a judgment against the guarantors. Now if the guarantors at that time were of the position that the motion for summary judgment and the summary judgment that was entered that they never defended was somehow unenforceable, they waived the right to make that argument when they allowed UCB to give up substantial rights by agreeing to the 363 sale, by submitting the property to the jurisdiction of the bankruptcy court and allowing the debtor to sell the property pursuant to what I believe are very strict requirements set forth in the bankruptcy code for the procedure and approval and the amount of a piece of property that is sold under the jurisdiction of the bankruptcy court. Now the only reason that we're here today even discussing that sale, because it's uncontested that it satisfied all the requirements under 363 pursuant to the bankruptcy court, is because after all that was entered, after the guarantors agreed to that order, they are now taking the position that the motion for summary judgment and the summary judgment and the judgment order that were entered back in January 2013 is somehow conditioned on the existence of a quote unquote judicial sale. Our position is that that's not the case. It's very simple. We filed a motion for summary judgment on the entire complaint. That was heard, adjudicated, and a judgment was entered. Now they're correct. We could have left it at a $3 million judgment, but that ignores the practicalities of a foreclosure case as it existed in January 2013. We couldn't move to enforce that because it's an interlocutory order. Recognizing that, we included in the order the fact that we would give, ultimately, credit to the defendants for whatever amount was received for the sale. I think that's reasonable. Most trial court judges require some condition like that in an order, saying this is not a final order. There will be proceeds of the sale. These defendants are entitled to that. That's what we did. The only reason why we're here today discussing whether or not a 363 sale can be considered a judicial sale is because counsel has put this condition, proceeding as he calls it, on the judgment, which really is not there. The judgment was adjudicated and the motion was granted, and they never defended that. But even if that's not the case, I think it's very simple. We filed a motion for summary judgment on the complaint. Summary judgment was granted. We got a judgment of $3 million. We then subsequently went through an entire briefing schedule to show that we were providing them with all of the credits for the payments that were made in the bankruptcy case and the sale. And we actually reduced it to ultimately a $1.6 million judgment. That was the deficiency. That was the deficiency. That was what was left after we gave them credit for the payments that were made in the bankruptcy case and also the sale of the property. So I think it's very simple. We got a judgment on the guarantees. It wasn't conditional. To the extent that they interpreted it as having some sort of condition proceeding, the judge specifically reserved the right in that order to address any deficiency judgment issues later. I certainly think this is a deficiency judgment issue that was not present at the time. Nobody knew at the time. Well, maybe the defendants knew at the time they were going to file for bankruptcy, but we certainly didn't. The judge certainly didn't. It was absolutely within his discretion to interpret his own order as allowing for this credit even though it wasn't technically a judicial sale under the IMFL. Now, if we are going to get into whether or not a 363 sale can be considered a judicial sale, it absolutely can. In the IMFL under Section 1506-F, that provides for all sorts of alternative ways of disposing of a property. And it allows for disposal of the property not by public auction, by a person other than the one customarily designated by the court, and a catch-all. Such other matters as approved by the court to ensure sale of the real estate for the most commercially favorable price for the type of real estate involved. It's absolutely what happened here. It isn't really, is it? They filed for bankruptcy, and the trial court, it seems like, in essence, lost jurisdiction at that point to the bankruptcy court, and the sale was not under the auspices of the trial court. It was not. And we're not making the argument that, under any circumstance, that without the judge's ultimate approval, that a 363 sale, or even a common law judicial sale, is the same thing as a statutory judicial sale under the IMFL. The point that I'm making in this is that the IMFL authorizes the judge to approve sales that aren't necessarily a strict judicial sale under 1507. 1506G also allows the court to approve a sale by the agreement of the parties. All of the parties involved here agreed to this in an agreed order that was supervised under the jurisdiction of the bankruptcy court. Did that agreed order contemplate the interest and the attorney's fees? It did add additional fees to what they considered to be the bank's claim. So if you look in the agreed order, it states the $3 million judgment, and then it adds additional real estate taxes and attorney's fees. And let me see if it added interest as well. All to be considered a quote-unquote secured claim by the bank. It added real estate taxes, attorney's fees, appraisal fees, and other fees. So it added an additional $77,000. It did not contemplate the interest, but I think the interest issue has been made very clear in Illinois. The interpretation of the statute is that post-judgment interest begins occurring on the date that the judgment of foreclosure and sale is entered. I guess my question to you is whether the agreed order in the bankruptcy. It did not specifically address the interest, no. So I guess my question is I understand that the circuit court in Will County has the authority to accept that sale and bankruptcy as the judicial sale in lieu of or as one of. But how does that same court have the authority then to add on costs and fees to that sale that weren't authorized by the agreement in the bankruptcy? I just am trying to determine whether they need to sort of pick and if they're going to accept the agreed order in the bankruptcy. Okay, they can ask the judge to certify that. But then they said, well, we want you to certify this, but then we want you to add these things that we think we are entitled to if it was just a regular judicial sale. I guess that's the part that I'm stuck on. It's like the circuit court has lost jurisdiction, but then enters into some agreements, yes, we're going to go through bankruptcy. Now we're going to pull it back, and now we're going to say, well, yeah, we agreed to this, but when we come back to this ball diamond, now we can add some things on it, and we want to do that. Where is the authority for them to do that, to add these things that cost some of the provisions that don't seem to be part of the judgment of bankruptcy? Well, the judgment of the bankruptcy, quite frankly, when that was entered, we didn't contemplate that the guarantors would change their position, and we would be before you today arguing whether or not a judicial sale occurred. So at the time that that was entered, I don't think that they even considered this to be a possibility because everyone was in agreement as to where we were on the deficiency. But I think to the extent that we're arguing it is a deficiency under Count 1, or a deficiency that's allowed pursuant to the mortgage foreclosure case, the fact that the judgment of foreclosure was entered, that started that running. And that's just how it is in the statute, and that's how the case law has interpreted it, that the post-judgment interest just begins running at the judgment of foreclosure and sale. And it's not something that we made up, and that's just how it's been applied. And so that's how it was applied here. We had nothing at the time, nothing to the contrary, that said if you're in this strange situation where the borrower files for bankruptcy, and everybody's in agreement that this is what's going to happen, but then later on one of the parties changes its mind, and you're here trying to figure out what to do. We didn't have any case law or precedent to determine what to do in that situation, other than looking at the statute, looking at how it's been interpreted in Illinois, and saying statutory post-judgment interest begins running at the judgment of foreclosure and sale. Say again what the change of mind was. At the time we entered into the agreed judgment order in the bankruptcy, the guarantors, UCB made the guarantors consent to that judgment, a condition of the enforceability against the bank. We wanted them to acknowledge that by agreeing to these sale procedures, we're not waiving any rights we have as against you. We are reserving every right we possibly have to proceed with our judgment against you. To the extent of the deficiency judgment. Right, and we never tried to enforce a $3 million judgment against them. In fact, we submitted additional affidavits and proof with respect to the credits that we were giving them to reduce the judgment to $1.6 million. So there was never any position taken by the bank that they weren't entitled to those credits, that even whether you call it a deficiency or judgment, deficiency judgment, we're always intended to give them credit for whatever the sale proceeds were going to be, and we did do that. And you're saying that the guarantors then took the position that they didn't have to pay the deficiency judgment? Correct. That's what they're saying here today. They've presented it in a variety of different ways, but ultimately what they're saying is that the summary judgment that we never defended, that we still have never presented any sort of defense to the liability under the loan documents, we're not liable for that because we don't like what happened. We don't like the order that you wrote. One minute, please. Let me just ask you the question that I asked Mr. Amin. Why did the trial court have anything left to do with the foreclosure action once the sale had been completed under the auspices of the bankruptcy court? The trial court, we actually posed to the trial court the option of simply dismissing Count 1 and proceeding, just dismissing it and proceeding on Counts 2 through 5, which ultimately is the judgment that was entered. But the trial court ultimately felt that he could approve the 363 sale as a judicial sale to the extent that this was under the auspices of a mortgage foreclosure case. And he was trying to wrap up the case. We were willing to ultimately dismiss Count 1 because we had the existing judgments on Counts 2 through 5. And then we did dismiss Count 6 against the borrower.  We were willing to approve that sale to the extent that he could take judicial notice of what happened in the bankruptcy court. And we were using that sale to apply credits. So to the extent that he wanted to ratify that sale as having been, justice having been done, which is one of the conditions of approval of a sale under 1508, he did that. And it allowed, I guess, it provided for the credit of the sale. I mean, we would have given the credit of the sale anyways under Counts 2 through 5 because it's legitimate credit that we received. But we gave the judge that option because ultimately for us, we already had a judgment on 2 through 5. So we didn't really need that. But he did that. There was nothing that you could have gotten from the circuit court here that you didn't already have. Oh, correct. When we went back before the circuit court, ultimately what we were just doing is finalizing the judgment that we had gotten in January 2013. So you could have just voluntarily dismissed your action. Certainly. And we would be in the exact same position because our position is we have a judgment on Counts 2 through 5. And to the extent that they've argued that no judgment was entered here on those counts, they've admitted in the record claiming it was an inchoate judgment. And they're also here. If no judgment was entered there, you would have no jurisdiction right now. They've already taken the position and waived that, that a final disposition of all the counts have been made. So nothing further, Your Honors. We request that the judgment be upheld. Thank you. Mr. Amin, any rebuttal? Good afternoon, Your Honors. Just to touch on a few points. I think it's important to make something very clear. Again, going back to the original complaint, because that's what we have to look at to see the relief sought by the appellees. Count 1, the guarantors were included in Count 1 only insofar as a deficiency judgment. Counts 2 through 5, the guarantors, the appellees sought full and absolute judgment on the guarantors in Counts 2 through 5. Now, the question that I believe you have to ask is, if they had judgment on Counts 2 through 5 all along, why would they need to come back to the foreclosure court in order to file a motion to confirm and perfect a deficiency judgment? They're saying they already had a judgment on Counts 2 through 5. If they had that judgment, they could have executed on that judgment at any time. And if you look at the law, Section 1501b-5 of the IMFL permits filing separate guarantee counts simultaneously with a mortgage foreclosure, and the Northern Trust v. 8 South Michigan Avenue case, which I cite in my brief, also says expressly that a plaintiff is not required to complete a foreclosure before obtaining judgment on a guarantee. So if they had judgments on Counts 2 through 5 back in January of 2013, why would they then need to come back into the court after the bankruptcy sale and perfect a deficiency? So I think the point to take away from this hearing is there was no judgment on Counts 2 through 5. They could have sought judgment. In the motion for summary judgment they filed, they could have mentioned, even mentioned Counts 2 through 5. They didn't mention it once. They could have sought the relief they requested in the complaint on Counts 2 through 5, which is a full and absolute judgment without the limitation of the deficiency and without the intervening condition of a judicial sale. But they didn't do that. What were you trying to accomplish? Accomplish with what specifically, Judge? Going back, after the bankruptcy, everything was settled by the sale under the auspices of the bankruptcy court. Correct. So what were you arguing when you went back? Well, remember, they brought the case back and they were relegated in order to go after my clients for a deficiency. They were forced to come back because the original judgment they got was only limited to a deficiency. They never got judgment on Counts 2 through 5. If they did, they wouldn't have to come back. So we were brought back by the appellee in this court to defend their claim that they're entitled to a deficiency, and they're not entitled to a deficiency because there's no more lien, there is no judicial sale, at least under the IMFL, and appropriately we're defending that proposition that they can perfect this deficiency judgment. But the point I'm making is, again, there is no judgment on Counts 2 through 5. If there was, they would never have to come back. They could have just pursued that in the foreclosure court at any time had they gotten judgments on those counts. The right to seek a deficiency, your clients weren't discharged from the bankruptcy, right? So you have an agreement which outlines the terms of the sale and the bank says, you know, we're not waiving our rights, we're not going to give up our rights to go for the deficiency, and it seems that your clients agreed to that. Yeah, we certainly didn't waive it, and I submit that we did not waive any deficiency, but what I will say is that the manner in which they're trying to, you know, if they would have done things correctly, I think what they would have done is made clear all the way back when they filed the motion for summary judgment. We are getting a judgment not based on a deficiency. The guarantees say we're entitled to full judgment, and we are seeking a judgment on the full amount irrespective of whether there's a deficiency. But they didn't do that. They chose to limit their judgment to a deficiency. So now what they're doing is they sold the property in bankruptcy. They realize that, hey, we don't have a full judgment without a condition of this sale taking place, a judicial sale taking place and a deficiency. We've got to come back and fashion a way where we can perfect that judgment and substitute a 363 sale for a judicial sale and hope that the court is going to say, yes, you know, you're entitled to the deficiency. And, again, the guarantors seeing that this is a completely novel concept that they're putting forth, using a bankruptcy sale to confirming a bankruptcy sale in a mortgage foreclosure court similar to 1508 when there's no instance of that occurring, you know, we defended it. We're not saying we waived the deficiency, but we are saying that there was never a full judgment entered. We have an opportunity. They never sought judgments on counts 2 through 5. We should have an opportunity to defend that. If they're saying that they're entitled to judgment on counts 2 through 5, violate a proper motion for summary judgment, say we're seeking full judgments on counts 2 through 5, and now we'll have an opportunity to defend that. Now, you know, I want to briefly touch upon one point. The counsel is arguing, well, we didn't defend it in the summary judgment. The salient point, in my view, is this. If they're not seeking judgments on counts 2 through 5 and they're deliberately seeking only a deficiency when they have a right to seek full and absolute judgment, why would we defend a position when they're not properly seeking full judgment? I think that was an error on the part of the appellee. Well, they should accept the limitation of deficiency judgment. I mean, I don't see how you think this is benefiting the client to say, hey, if they had the right to go for the full judgment and have each one of these in those four counts, each one to be held for the full amount of the judgment, or to limit them to just deficiency. I don't see how your argument is helpful. Well, I think it's the two alternatives. We have a bank that's trying to go after my clients for a lot of money, and they have the right to go after them on the full amount of the judgment without any intervening sale or without any limitation to deficiency, but they chose not to. They chose to go after them only for a deficiency after a sale of the property. And incidentally, the sale of the property took place. I should mention that the appellees waited. The sale took place in October of 2013. They waited all the way until March of 2014 before they filed their motion to ratify. In the intervening time, ultimately they sought pre-judgment interest. After waiting that time period, in addition to the prior periods of almost $300,000, they sought additional attorney's fees for under $100,000. So the ultimate point that I'm making is if they had judgment on the personal guarantees, then they could have executed on it immediately. They never properly filed a motion and gave the guarantors the opportunity to respond to that motion saying, we're seeking relief on counts two through five for the full unconditional amount of judgment based on the personal guarantees, and therefore we never had an opportunity to defend them. And what they did was they got the guarantors to acknowledge a deficiency in the bankruptcy, realized that they didn't have a judgment in the foreclosure court, and they used this novel way of trying to confirm a bankruptcy sale in order to get a quicker judgment. If they're looking for judgment on the personal guarantees, they should have filed a motion on those personal guarantees and gave us the opportunity to defend those. Are there any questions? Thank you very much. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a panel change.